UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| EMPLOYMENT DEVELOPMENT DEPARTMENT, et al.,<br><br>      Appellants,<br><br> v.<br><br>FRANK BERTUCCIO,<br><br>      Appellee.<br>_____<br>CALIFORNIA CONTRACTORS STATE LICENSE BOARD, et al.,<br><br>      Appellants,<br> v.<br><br>FRANK BERTUCCIO,<br><br>      Appellee.<br>_____<br>FRANK BERTUCCIO,<br><br>      Appellant,<br><br> v.<br><br>CALIFORNIA CONTRACTORS STATE LICENSE BOARD, et al.,<br><br>      Appellees.<br>_____ | Case No.: 09-CV-05209-LHK<br><br>ORDER DISMISSING RELATED BANKRUPTCY APPEALS<br><br><br><br><br><br><br><br>Case No.: 09-CV-05292-LHK<br><br><br><br><br><br><br><br><br><br>Case No.: 09-CV-05454-LHK |

Presently before the Court are appeals in three related bankruptcy proceedings. All three appeals stem from Frank Bertuccio's 2004 Chapter 13 bankruptcy petition. Prior to filing for bankruptcy, Bertuccio's contractor's license was suspended due to an unpaid employment tax liability. After extensive litigation, trial, and post-trial briefing, the Bankruptcy Court ruled that the Employment Development Department (EDD) and the California Contractors State License Board (CSLB) violated the automatic stay provision of the Bankruptcy Code by refusing to reinstate Bertuccio's contractor's license for twenty-four days despite notice of Bertuccio's filing for bankruptcy. The Bankruptcy Court, however, also ruled that Bertuccio failed to show any damages in connection with the relatively brief refusal to reinstate his contractor's license. Finally, the Bankruptcy Court denied attorney's fees under recent Ninth Circuit precedent and the equitable doctrine of unclean hands.

In these appeals, the EDD and the CSLB (collectively "Defendants") appeal the ruling in connection with the finding of a violation of the automatic stay provision, while Bertuccio appeals the ruling in connection with damages and attorney's fees. The Court affirms the Bankruptcy Court's decision on all three issues.

### I. BACKGROUND

**A. Factual Background**

The underlying facts are not in dispute. In 1995, the CSLB issued Bertuccio a contractor's license, as the sole owner of business named "European Hardwood Floors Design & Interiors," to install flooring.[1] On June 25, 2003, the EDD informed the CSLB that Bertuccio was in violation of California state law for failing to pay $34,517.46 in employment taxes. On June 26, 2003, the CSLB sent Bertuccio a letter advising him of the unpaid employment taxes and the potential

---

[1] In his application for a contractor's license, Bertuccio filed a statement under penalty of perjury that he had *never* been convicted of a crime. This statement took on greater salience in the Bankruptcy Court's 2008 trial, which revealed that Bertuccio had actually been convicted of numerous crimes at the time he applied for a contractor's license. *See below*.

2

Case No.: 09-CV-05209, 09-CV-5292, 09-CV-5454
ORDER DISMISSING RELATED BANKRUPTCY APPEALS

suspension of his contractor's license if the tax default was not corrected by August 26, 2003. On August 26, 2003, after Bertuccio failed to respond to the notice of tax default, the CSLB suspended Bertuccio's contractor's license solely for failing to resolve the outstanding tax liability owed to the EDD in accordance with California Business & Professions Code §7145.5 ("Failure to resolve outstanding liabilities as grounds for refusal to renew license").

While his license was suspended, Bertuccio continued to operate his business. At trial, Bertuccio initially insisted that he only continued selling flooring materials, which does not require a license, as opposed to installing flooring materials, which does require a license. However, the Bankruptcy Court found, based on evidence submitted by Bertuccio, that Bertuccio entered into contract for floor installation in October 2004.[2] Bertuccio eventually acknowledged that he entered into these contracts on the belief that his contractor's license would be reinstated in light of his Chapter 13 bankruptcy filing.

On October 7, 2004, some thirteen months after his license suspension, Bertuccio filed for Chapter 13 bankruptcy. Counsel for Bertuccio sent notice of the bankruptcy petition to the CSLB on October 8, 2004, and requested that the CSLB reinstate Bertuccio's license. Six days later, on October 14, 2004, the CSLB relayed Bertuccio's request to the EDD. The EDD, however, declined the request to reinstate Bertuccio's license. On October 18, 2004, counsel for Bertuccio called the EDD directly, and again requested a reinstatement of Bertuccio's license. In response, the EDD asked whether Bertuccio's Chapter 13 bankruptcy plan required use of the contractor's license, as it was not clear to the EDD that Bertuccio needed the license to fund the plan. On November 1, 2004, counsel for Bertuccio called to advise the CSLB that she would be filing a motion for an injunction requiring reinstatement of Bertuccio's license. After receiving this information from

---

[2] According to the Bankruptcy Court, the contracts were initially brought into evidence by Bertuccio as evidence of the alleged damages he sustained as a result of the refusal to reinstate his contractor's license. The Bankruptcy Court found, through evidence presented at trial, that the contracts were both entered into, and cancelled, *prior* to the Chapter 13 petition.

3
Case No.: 09-CV-05209, 09-CV-5292, 09-CV-5454
ORDER DISMISSING RELATED BANKRUPTCY APPEALS

counsel, an EDD representative sent CSLB an e-mail authorizing the release of the license to Bertuccio. The CSLB reinstated Bertuccio's contractor's license on November 1, 2004.

Also on November 1, 2004, Bertuccio commenced an adversary proceeding in Bankruptcy Court, asserting damages under the automatic stay provision of the Bankruptcy Code on the ground that his license was not restored immediately after notification of his bankruptcy petition. While his bankruptcy action was pending, Bertuccio filed an application for a corporate license under the name "European Floor Coverings, Inc." At trial, Bertuccio testified that this application was denied because his contractor's license had been suspended.

The Bankruptcy Court held a trial on February 13 and 15, 2008. During the course of the 2008 trial, the CSLB learned that Bertuccio had lied on his original application for a contractor's license, as well as on his subsequent applications for corporate contractor's licenses. Specifically, Bertuccio failed to disclose several criminal convictions extending between 1984 and 1999. On April 11, 2008, the CSLB held a hearing regarding revocation of Bertuccio's contractor's license in light of Bertuccio's failure to disclose his extensive criminal record. On June 2, 2008, the CSLB issued a final decision revoking Bertuccio's license, with a one-year ban on reapplying for a reissuance or reinstatement.

On December 31, 2008, the Bankruptcy Court issued a decision ruling that Defendants, by refusing to reinstate Bertuccio's contractor's license, violated the automatic stay provision. *See In re Bertuccio*, 414 B.R. 604 (Bankr. N.D. Cal. 2008) ("*Bertuccio I*"). In that same decision, however, the Bankruptcy Court also ruled that Bertuccio had failed to establish any damages. On October 20, 2009, after the parties were given an opportunity to fully brief the remaining issues of attorney's fees and costs, the Bankruptcy Court denied Bertuccio's request for attorney's fees and costs. *See In re Bertuccio*, 2009 Bankr. LEXIS 3302 (Bankr. N.D. Cal. Oct. 15, 2009) ("*Bertuccio*

4

*II*"). The Bankruptcy Court entered final judgment on October 28, 2009. *See* October 28, 2009 Judgment, Case No. 04-56255, Adversary No. 04-5524.

### B. Procedural History in District Court

For each of these related cases, the notice of appeal from Bankruptcy Court was filed in November 2009. On June 11, 2010, the Honorable James Ware granted the parties' stipulation to consolidate briefing and extend deadlines for the briefing schedule. Pursuant to the parties' own stipulation, opening briefs would be due by September 28, 2010, responsive briefs would be due by October 29, 2010, and reply briefs would be due by December 3, 2010. Without an Order approving the parties' stipulation, opening briefs would have been due in mid-July, respondent briefs would have been due 21 days later, and reply briefs would have been due 14 days after service of respondent briefs. *See* Local Bankruptcy Rule 8010-1.

These cases were reassigned to this Court on August 2, 2010. On September 28, 2010, the same day as the deadline for filing opening briefs, the parties filed yet another stipulation agreeing to further extension of briefing deadlines. In violation of Civil Local Rule 6-2, however, the parties did not set forth with particularity the reasons for the requested extension of time. In fact, the parties provided no reason at all. Accordingly, the Court denied the parties' request at that time. *See* September 29, 2010 Order Denying Request [dkt. #16]. After the parties provided additional reasons for seeking an extension, the Court granted an extension, in which briefing would be complete by December 2010. *See* October 1, 2010 Order Granting Extension as Modified [dkt. #18]. The parties complied with that latter schedule, and briefing is now complete.[3]

### II. STANDARDS OF REVIEW

The Court reviews the Bankruptcy Court's factual findings for clear error and its legal conclusions *de novo*. *See In re Tucson Estates*, 912 F.2d 1162, 1166 (9th Cir. 1990). Thus, the

---

[3] Pursuant to the Northern District's Bankruptcy Local Rules, unless otherwise noted, a matter is deemed submitted for decision upon completion of the briefing. *See* B.L.R. 8010-1(b).

Court reviews the Bankruptcy Court's legal decisions regarding the automatic stay *de novo*. *Berg v. Good Samaritan Hosp.*, 198 B.R. 557, 560 (9th Cir. BAP 1996), *aff'd sub. nom In re Berg*, 230 F.3d 1165 (9th Cir. 2000).

The Bankruptcy Court's assessment of damages under § 362(h) is reviewed for an abuse of discretion. *See In re Miller*, 262 B.R. 499, 503 (9th Cir. BAP 2001). The Bankruptcy Court's decision with respect to attorney's fees and costs is also reviewed for abuse of discretion or erroneous application of the law. *See In re Dawson*, 390 F.3d 1139, 1145 (9th Cir. 2004).

### III.  DISCUSSION

There are three issues on appeal. First, whether Defendants violated the automatic stay provision by refusing to reinstate Bertuccio's contractor's license despite notice of the Chapter 13 bankruptcy petition? Second, whether Bertuccio was entitled to damages as a result of the violation of the automatic stay? Third, whether Bertuccio's counsel was entitled to attorneys' fees and costs as a result of the violation of the automatic stay?

As explained below, the Court affirms the well-reasoned opinion of the Bankruptcy Court with respect to all three issues.

**A.  Violation of the Automatic Stay Provision of the Bankruptcy Code[4]**

At the time Bertuccio initiated his adversary proceeding, the automatic stay provision of the Bankruptcy Code provided:

> Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of--
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the

---

[4] Unless otherwise noted, all references to the Bankruptcy Code refer to code provisions in effect at the time Bertuccio initiated the underlying adversary proceeding in October 2004.

6
Case No.: 09-CV-05209, 09-CV-5292, 09-CV-5454
ORDER DISMISSING RELATED BANKRUPTCY APPEALS

case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

11 U.S.C. §362(a)(1).[5]  An individual injured by a "willful violation" of the stay may seek damages, including costs and attorneys' fees.  11 U.S.C. §362(h).  As summarized by the Bankruptcy Court, "[a] party seeking damages for violation of the automatic stay must prove by a preponderance of the evidence that (1) a bankruptcy petition was filed; (2) the debtor is an individual; (3) the creditor received notice of the petition; (4) the creditor's actions were in willful violation of the stay; and (5) the debtor suffered damages." *See In re Bertuccio*, 414 B.R. 604, 611 (Bankr. N.D. Cal. 2008) (citing *In re Henry*, 328 B.R. 664, 667 (Bankr. E.D.N.Y. 2005). The parties hotly dispute whether the EDD's and CSLB's actions were "willful," and whether Bertuccio suffered any damages.[6]

The Bankruptcy Court ruled that, under the automatic stay provision, Defendants had an "affirmative duty" to reinstate Bertuccio's license upon notice of his bankruptcy filing.  Defendants challenge the Bankruptcy Court's ruling on three grounds, arguing that: (1) there was no "post-petition affirmative act" in violation of the automatic stay; (2) the "police power" exception to the automatic stay applies in these circumstances; and (3) Bertuccio was not entitled to the stay because he never had a right to the contractor's license since he lied about his criminal history on his license application.  As explained below, none of the three arguments is ultimately persuasive.

### 1. Post-petition Affirmative Act

"An award of actual damages under Section 362(h) requires a showing by the debtor that she sustained an injury from a 'willful' violation of the stay. A 'willful violation' does not require

---

[5] As the Bankruptcy Court noted, Section 362 was substantially amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "BAPCA").  Importantly, the BAPCA expressly amended Section 362 to limit automatic stays in numerous circumstances, including "with respect to the withholding, suspension, or restriction of a driver's license, a *professional or occupational license*, or a recreational license." *See* 11 U.S.C. §362(b)(2)(D) (emphasis added).  This narrowing of the automatic stay requirement would, presumably, have negated Bertuccio's adversarial proceeding, a proceeding solely based on the refusal to reinstate his professional contractor's license.  However, Bertuccio's adversary proceeding was filed in October 2004, prior to the enactment of BAPCA, and thus the amendments are not controlling in his action.

[6] There is no dispute that the first three elements are satisfied.  Bertuccio, an individual, filed a Chapter 13 bankruptcy petition on October 7, 2004.   In seeking reinstatement of the contractor's license, counsel for Bertuccio notified both the CSLB and the EDD of the filing.

7
Case No.: 09-CV-05209, 09-CV-5292, 09-CV-5454
ORDER DISMISSING RELATED BANKRUPTCY APPEALS

specific intent to violate the automatic stay. A violation of the automatic stay is 'willful' if 1) the creditor knew of the stay and 2) the creditor's actions, which violated the automatic stay, were intentional." *See In re Roman*, 283 B.R. 1, 7-8 (9th Cir. BAP 2002) (internal citations omitted). "Once a creditor knows that the automatic stay exists, the creditor bears the risk of all intentional acts that violate the automatic stay regardless of whether the creditor means to violate the automatic stay." *See In re Campion*, 294 B.R. 313, 318 (9th Cir. BAP 2003).

Defendants argue that they did not actively seek collection of the tax liability after receiving notice of Bertuccio's filing for Chapter 13 bankruptcy. The August 26, 2003 *pre-petition* suspension of Bertuccio's contractor's license was not a violation of the stay. Instead, the issue is whether Defendants' refusal to reinstate the suspended license, after notice of Bertuccio's Chapter 13 petition, is a continuation of an action against a debtor to recover a claim that arose before the bankruptcy filing. *See* 11 U.S.C. §362(a)(1). In these circumstances, the answer is a clear yes.

The automatic stay provision, § 362(a)(1), plainly states that "the commencement or *continuation*, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to *recover a claim against the debtor that arose before the commencement of the case* under this title" falls under the automatic stay. 11 U.S.C. §362(a)(1) (emphasis added). It is undisputed that the pre-petition suspension of Bertuccio's contractor's license was based on Bertuccio's failure to pay employment taxes.[7] The Bankruptcy Court found, and it is also uncontested, that Bertuccio's license would have been promptly reinstated had he paid the taxes owed to the EDD. By denying Bertuccio's request for reinstatement of his license, Defendants affirmatively acted in continuation of an action to recover on a claim, and thus violated the automatic stay provision. *See Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1215 (9th Cir. 2002) (holding that "§ 362(a)(1) imposes an affirmative duty to discontinue post-petition collection actions.").

---

[7] The EDD does suggest that "[f]ailure to pay a tax was not *per se* the sole basis for suspending Bertuccio's contractor's license." *See* EDD Appellant's Opening Brief at 12. This statement, however, is in the context of arguing for the "police powers" exception to the automatic stay provision, an argument more fully addressed below.

8

Case No.: 09-CV-05209, 09-CV-5292, 09-CV-5454
ORDER DISMISSING RELATED BANKRUPTCY APPEALS

### 2. "Police Powers" Exception to Automatic Stay

The "police powers" exception to the automatic stay provides:

> The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay--
>
> . . .
>
> (4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit or any organization exercising authority under the Convention on the Prohibition of the Development, Production, Stockpiling and Use of Chemical Weapons and on Their Destruction, opened for signature on January 13, 1993, *to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment*, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power;

11 U.S.C. §362(b)(4) (emphasis added).  By its own terms, the "police powers" exception does not include governmental actions to enforce a money judgment.  "This exception is intended to allow governmental units to sue a debtor 'to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law . . . .'  House and Senate Reports (Reform Act of 1978) (H.Rep. No. 595, 95th Cong., 1st Sess. 343 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 52 (1978)).  *See In re Dunbar*, 235 B.R. 465, 471 (9th Cir. BAP 1999), aff'd, 245 F.3d 1058 (9th Cir. 2001).

To assess whether a state's administrative actions are within the scope of the police powers exception, the Ninth Circuit has identified two tests: the pecuniary purpose and the public policy tests.  *See In re Dunbar*, 235 B.R. at 465.  The Ninth Circuit Bankruptcy Appellate Panel describes the two tests as follows:

> Under the "pecuniary purpose" test, the court must determine whether the government action relates "primarily to the protection of the government's pecuniary interest in the debtors' property or to matters of public safety and welfare."  *See In re Universal Life Church. Inc.*, 128 F.3d 1294, 1297 (9th Cir. 1997), cert. denied, 524 U.S. 952, 118 S. Ct. 2367, 141 L. Ed. 2d 736 (1998) (citing *N.L.R.B. v. Continental Hagen Corp.*, 932 F.2d 828, 833 (9th Cir. 1991)).  "Indeed, most government actions which fall under [§ 362(b)(4)] have some pecuniary component, particularly those associated with fraud detection.  This does not abrogate their police power function.  Only if the action is pursued 'solely to advance a pecuniary interest of the governmental unit' will the automatic stay bar it."  *Universal Life Church*, 128 F.3d at 1299 (9th Cir. 1997) (quoting *Thomassen*, 15 B.R. at 909).

> The "public policy" test distinguishes between those proceedings that effectuate public policy and those that adjudicate private rights. *Universal Life*, 128 F.3d at 1297; *In re Charter First Mortg., Inc.*, 42 B.R. 380, 383 (Bankr. D. Or. 1984). Under the latter test, the court considers whether the administrative agency is exercising legislative, executive, or judicial functions. *In re Poule*, 91 B.R. 83, 86 (9th Cir. BAP 1988). "Where the agency's action affects only the parties immediately involved in the proceedings, it is exercising a judicial function and the debtor is entitled to the same protection from the automatic stay as if the proceeding were being conducted in a judicial form." *Id*.

*In re Dunbar*, 235 B.R. at 471.

Defendants argue that both the pecuniary purpose and public policy tests are satisfied because the employment taxes assessed on Bertuccio would eventually go toward instruments like the State Unemployment Insurance fund, the State Unemployment Disability Insurance fund, and Employment Training Taxes, all of which benefit the public. The Court rejects Defendants' arguments, and agrees with the Bankruptcy Court that neither "police powers" exception to the automatic stay is satisfied. *See, e.g.*, *In re PMI-DVW Real Estate Holdings, L.L.P.*, 240 B.R. 24, 31 (Bankr. D. Ariz. 1999) ( noting that the "police powers" exception "allows a governmental unit to pursue actions to protect public health and safety, however Congress intended this exception to be given a narrow construction").

With respect to the pecuniary purpose test, the Bankruptcy Court properly determined, based on the evidence before it, that the suspension of Bertuccio's license was solely pecuniary. Bertuccio's license was not suspended based on any determination of fraud, public safety, or welfare, but was instead suspended solely for failure to pay taxes. Indeed, Bertuccio's license would have been promptly reinstated had he paid the taxes owed to the EDD. *See Bertuccio I* at 616-17 (citing Notice of Suspension to Bertuccio, which stated: "This suspension *will be* lifted when you submit proof from the [EDD] that the liability has been satisfied. Thus, the Debtor needed to do nothing more than pay the debt owing to the EDD."). Moreover, the EDD admitted that it required review of the debtor's plan before making its decision on releasing the suspension because it wanted to ensure its claims would be paid under the plan. *See id*. Finally, as soon as the EDD authorized the CSLB to remove the suspension, the CSLB did so without question and without inquiry into Bertuccio's qualifications. As the Bankruptcy Court aptly summarized: "It was simply a matter of owing back taxes. It is clear, therefore, that the continued suspension of

10
Case No.: 09-CV-05209, 09-CV-5292, 09-CV-5454
ORDER DISMISSING RELATED BANKRUPTCY APPEALS

[Bertuccio's] license was done solely to advance the pecuniary interests of the EDD." *Id*. at 617; *compare In Re Poule*, 91, B.R. 83 (9th Cir. BAP 1988) (finding legitimate police power exception where reason for suspension of debtor's license involved undisputed findings of "willful misconduct and fraudulent activities" against customers).

The Bankruptcy Court also properly determined that Defendants' actions did not satisfy the public policy test. As stated by the Ninth Circuit Bankruptcy Appellate Panel: "The purpose of [the California Contractor's License Law] is 'to guard the public against the consequences of incompetent workmanship, imposition, and deception.'" *See In Re Poule*, 91 B.R. at 87 (citing *Asdourian v. Araj,* 38 Cal. 3d 276, 282, 211 Cal. Rptr. 703, 696 P.2d 95 (1985)); *see also Chao v. Hosp. Staffing Servs. Inc.*, 270 F.3d 374, 389 (6th Cir. 2001) ("the public policy test calls upon courts to analyze whether a particular lawsuit is undertaken by a governmental entity in order to effectuate public policy or, instead, to adjudicate private rights."). Defendants' suspension of Bertuccio's license in August 2003 did not implicate the public interests of preventing incompetent workmanship or fraud. Instead, the suspension was simply a means of collecting a tax, and was completely unrelated to the debtor's qualifications or competence.[8] In these circumstances, where the reason underlying the suspension had nothing to do with the public policy interests of the California Contractor's License Law (e.g., protection of the public against incompetent, deceptive, or fraudulent conduct), the public policy exception to the automatic stay provision is not satisfied.

### 3. Bertuccio's Entitlement to Reinstatement of License

Defendants argue that Bertuccio's failure to disclose his prior criminal convictions on his contractor's license application nullifies the basis for a violation of the automatic stay. Both state entities assert that Bertuccio *likely* would not have received his contractor's license if the prior convictions had been revealed. Thus, Defendants contend that Bertuccio lacks standing, as his contractor's license was void *ab initio*. Moreover, Defendants repeatedly suggest that "the

---

[8] As the Bankruptcy Court noted, not until the trial in February 2008 did Defendants become aware of Bertuccio's criminal history and misrepresentations on his license application. *See Bertuccio I* at 617 n.44. In August 2003, the sole reason for Bertuccio's suspension was the tax debt owed to the EDD.

11

Case No.: 09-CV-05209, 09-CV-5292, 09-CV-5454
ORDER DISMISSING RELATED BANKRUPTCY APPEALS

equities" in this case do not support the Bankruptcy Court's determination that Bertuccio "was entitled to relief." *See, e.g.*, EDD Appellant's Opening Brief in Case No. 09-cv-5209-LHK at 19.

Defendants are incorrect that Bertuccio's bad acts, discovered four years after the license suspension, negate the fact that the EDD and CSLB willfully violated the automatic stay.[9] The Ninth Circuit's decision in *Southwest Adm'rs, Inc. v. Rozay's Transfer*, 791 F.2d 769 (9th Cir. 1986) is instructive. The *Southwest* court distinguished between two types of misrepresentations: fraud in the inducement and fraud in the execution. *Id.* at 774. Fraud in the inducement occurs when a misrepresentation is used to induce a party to assent to something she otherwise would not have, while fraud in the execution arises when an agreement is executed without knowledge, or a reasonable opportunity to obtain knowledge, of its character or its essential terms. *Id.* The Ninth Circuit held that "fraud in the execution results in the agreement being void *ab initio*, whereas fraud in the inducement makes the transaction merely voidable." *Id.* Here, the application was evaluated by the CSLB, who had ample opportunity to investigate. There is no indication by any of the parties that Bertuccio's criminal record was difficult to locate, or did not appear in the standard databases utilized for such information. Furthermore, while it is true that the CSLB *may have* denied Bertuccio's application if his criminal convictions were disclosed, the evidence presented to the Bankruptcy Court did not establish with certainty that his application would have been denied. For this Court to find that a denial would have been certain calls for speculation inappropriate on an appeal.[10] Thus, the debtor's fraud lies within the category of fraud in the inducement, making the license voidable. As the license is not clearly void *ab initio*, there is no

---

[9] The Court notes that whether Defendants violated the automatic stay provision is a separate and distinct question from whether Bertuccio is entitled to relief for the violation. Conflating these two questions, Defendants mischaracterize the bankruptcy's decision as determining that Bertuccio was "entitled to relief." In fact, just the opposite is true: the Bankruptcy Court *denied* Bertuccio his requested relief of damages and attorney's fees and costs. *See, e.g.*, *Bertuccio I* at 625 (ruling that Bertuccio failed to establish any damages) and *Bertuccio II* at *27-28 (denying Bertuccio attorney fees and costs under doctrine of "unclean hands").

[10] It is notable that the June 2, 2008 decision of the CSLB revoking Bertuccio's license included a one-year ban on reapplying for a reissuance or reinstatement of the contractor's license. *See Bertuccio I* at 610. This leaves open the possibility, however unlikely given his criminal history, that Bertuccio may apply for a reissuance of reinstatement of a contractor's license.

merit to Defendants' claim that there is no actual case or controversy because Bertuccio lacks standing.

Defendants protest that the Bankruptcy Court did not fully consider two arguably similar cases. In the first case, *In re Feature Homes, Inc.*, 116 B.R. 731 (Bankr. E.D. Cal. 1990), the debtor was a corporation whose corporate status was suspended for failure to pay taxes. The *Feature Homes* Bankruptcy Court refused to construe the State's refusal to issue a certificate of revivor as an affirmative action violating the automatic stay. *Feature Homes*, however, is distinguishable in significant respects. Most importantly, the *Feature Homes* court conducted no analysis regarding whether the State's conduct was an affirmative act violating the automatic stay provision because it had absolutely no tangible impact upon the debtor's business. *See Feature Homes*, 116 B.R. at 733. Moreover, the *Feature Homes* court reserved the possibility to compel a revivor if the suspension ever became necessary for the debtor's continued business operations. *Id.* Here, it is undisputed that Bertuccio sought reinstatement of his contractor's license in order to continue his business operations. Consequently, Defendants' argument that *Feature Homes* is somehow dispositive of the present case is unpersuasive.

The second case cited by Defendants, *In re Kimsey*, 263 B.R. 244 (Bankr. E.D. Ark. 2001), dealt with a debtor whose driver's license was suspended due to unpaid fines for traffic violations. The *Kimsey* Bankruptcy Court held that the State was not in violation of the automatic stay when it refused to lift the suspension of the driver's license. However, as the Bankruptcy Court reasoned below, the suspension in *Kimsey* involved express issues of public safety and punishment, thus distinguishing it from Bertuccio's suspension based solely on a tax debt. *See also In re Thomas*, 2007 Bankr. LEXIS 1320, *9 (Bankr. N.D. Cal. Apr. 5, 2007) (distinguishing *Kimsey* as a case involving refusal to reinstate license in order to enforce traffic laws as a matter of public safety, rather than for any financial reasons).

In sum, on *de* novo review, the Court affirms the Bankruptcy Court's ruling that Defendants violated the automatic stay provision of the Bankruptcy Code by refusing to reinstate Bertuccio's

contractor's license for twenty-four days despite actual notice of Bertuccio's bankruptcy petition. The Court now turns to the issues of damages and attorney's fees, respectively.

### B. Damages

Upon a finding of a willful violation of the automatic stay provision, a debtor is "entitled to an award of actual damages, costs, and attorney fees to the extent she was injured by the 'willful violation.'" *See In re Taylor*, 884 F.2d 478, 483 (9th Cir. 1989). "Section 362(h) provides little guidance regarding the applicable standards for awarding actual damages. Nonetheless, most courts apply a reasonableness analysis. Section 362(h) 'requires that the injured party be awarded the entire amount of actual damages *reasonably incurred* as a result of a violation of the automatic stay.'" *See In re Roman*, 283 B.R. at 11. On appeal, Bertuccio challenges the Bankruptcy Court's ruling that he did not establish any actual damages as a result of the violation of the automatic stay provision for the twenty-four day period between October 7, 2004 and November 1, 2004.

The Court's review of the record reveals no abuse of discretion in the Bankruptcy Court's damages ruling. Bertuccio offered three forms of evidence to prove lost profits. *See Bertuccio I* at 621-25. First, Bertuccio submitted two flooring installation contracts from October 4 and 7, 2004, alleging lost profits of about $14,000. However, as the Bankruptcy Court determined at trial, both contracts were entered into and cancelled *before* Bertuccio's bankruptcy petition was even filed. *Id*. No evidence was presented to show why the two contracts were cancelled. Thus, the cancellation of these two contracts could not have been due to the automatic stay violation because the contracts were cancelled before Bertuccio even filed for bankruptcy.

Second, Bertuccio testified that he averaged a net profit of $40,000 per month for the installation component of his business before his license was suspended in August 2003. However, Bertuccio's credibility was severely impeached at trial, and he offered absolutely no documentary evidence or business records, such as accounting records identifying income and expenses, of any kind in support of his testimony of income. Moreover, Bertuccio's testimony related to alleged earnings prior to the suspension of his license in August 2003. At the time of the October 2004 bankruptcy filing, Bertuccio had not installed flooring in over a year. Although courts have

recognized that lost profits are "necessarily an estimate" and need not be shown with "mathematical precision," Bertuccio failed to provide any support to his testimony of lost income. *See, e.g.*, *Humetrix, Inc. v. Gemplus S.C.A.,* 268 F.3d 910, 919 (9th Cir. 2001) (although lost profits are "necessarily an estimate," an appellate court may uphold an award of damages that is supported by substantial evidence).

On appeal, Bertuccio downplays his lack of credibility by stating that: "the record shows that, at the trial of this matter, [Bertuccio] testified truthfully, including *truthful testimony about his prior lies* on his application for the license."   *See* Bertuccio Reply Brief in Case No. 09-cv-05454-LHK at 5 (emphasis added).  This odd argument has no merit, and misrepresents Bertuccio's actions at trial.  Even at the 2008 trial, Bertuccio first lied about having a criminal record, and then only admitted his extensive criminal history after cross-examination by Defendants' counsel in open court.  In any event, the Bankruptcy Court did not abuse its discretion in deciding not to rely solely on Bertuccio's testimony, unsupported by any documentary or accounting records, with respect to lost income.

 Finally, Bertuccio also submitted a telephone log of potential customer calls between October 8, 2004 and October 31, 2004.  The phone log, however, did not differentiate between calls for potential installation projects and other projects.  Furthermore, the Bankruptcy Court found that "many of the calls" related to materials sales and inquiries regarding warranties for past installations.  *See Bertuccio I* at 624-25.  The Bankruptcy Court did not exceed its discretion by determining that such speculative evidence does not establish actual damages with respect to Bertuccio's potential installation projects.

 Thus, the Court can no discern no abuse of discretion in the Bankruptcy Court's ruling that Bertuccio failed to establish actual damages.

### C.  Attorneys' Fees and Costs

In addition to seeking damages, a debtor is expressly allowed to seek costs and attorneys' fees under Section 362(h). In determining the appropriate amount of attorneys' fees, "the court looks to two factors: '(1) what expenses or costs resulted from the violation and (2) what portion of

15

those costs was reasonable, as opposed to the costs that could have been mitigated.'" *See In re Roman*, 283 B.R. at 12. Under recent Ninth Circuit authority, however, attorneys' fees and costs recoverable for violations of the automatic stay are limited to work performed prior to the remedying of the stay violation. *See Sternberg v. Johnston*, 595 F.3d 937, 949 (9th Cir. 2009) (actual damages *include* attorney's fees incurred seeking to enforce the automatic stay, but *do not include* attorney's fees incurred in prosecuting the adversary proceeding to obtain damages). Finally, a court may consider the equitable doctrine of "unclean hands" in evaluating requests for attorneys' fees and costs in relation to a bankruptcy proceeding. *See In re Gustafson*, 111 B.R. 282 (9th Cir. BAP 1990), *overruled on other grounds by In re Gustafson*, 934 F.2d 216 (9th Cir. 1991).

In light of *Sternberg*, the Bankruptcy Court took a two-prong approach to deciding attorneys' fees for this case. First, the Bankruptcy Court denied the bulk of attorneys' fees and costs because, on counsel for Bertuccio's own account, only $4,084.75 of the fees sought were incurred prior to reinstatement of Bertuccio's license on November 1, 2004. *See Bertuccio II* at *21. The Bankruptcy Court denied the fees incurred after reinstatement of the license, fees which amounted to $28,177, as unrecoverable under *Sternberg*. *See id*. at *22. Second, the Bankruptcy Court denied the remainder of attorneys' fees (the $4,084.75) on the basis of Bertuccio's bad faith actions ("unclean hands").

This Court finds that the Bankruptcy Court did not abuse its discretion in either respect. The Ninth Circuit, in *Sternberg*, directly addressed the question of attorney's fees incurred to obtain damages (as opposed to those incurred seeking to enforce the automatic stay), and answered that those fees are not recoverable. Although noting that *Sternberg* "weakens substantially the effectiveness of the automatic stay," the Bankruptcy Court found itself bound, as this Court is also bound, to follow direct Ninth Circuit authority. Thus, the Bankruptcy Court properly found that the fees incurred after reinstatement of Bertuccio's license are not recoverable.[11]

---

[11] In *Sternberg*, the Ninth Circuit clarified that it was not considering the civil contempt authority of a bankruptcy court, and was not limiting the availability of contempt sanctions, including attorney's fees, as an option where otherwise appropriate. *See* 595 F.3d at 946 n.3. Counsel for Bertuccio suggests that the Court remand to the Bankruptcy Court the issue of whether attorney's fees are appropriate as a "civil contempt sanction." *See* Bertuccio Reply in Case No. 09-cv-5454-LHK at 3. The Court declines to remand on that basis. The Bankruptcy Court could have

The Bankruptcy Court was also within its discretion to deny the remainder of the fees based on the unclean hands doctrine. Although hesitant to undercut the policy arguments in favor of remedying violations of the automatic stay provision, the Bankruptcy Court found that, in these "unusual circumstances," the equitable considerations outweighed any such policy concerns. *See id*. at *27. Here, Bertuccio knew he procured his contractor's license by lying on the application, yet still sought recovery of such a fraudulently procured license. As the Bankruptcy Court noted, Bertuccio's unclean hands "strike at the very heart of the basis for this adversary proceeding." *See id*. at *24. Bertuccio did not just misrepresent his criminal history on his license application, but he also misrepresented that criminal history all the way through four years of bankruptcy litigation, and was only exposed at trial in February 2008. In light of these egregious facts, the Bankruptcy Court's decision denying the remainder of fees was not an abuse of discretion or erroneous application of law.

## IV.  CONCLUSION

For the reasons specified above, the Court affirms the Bankruptcy Court's decisions with respect to the rulings on violation of the automatic stay, damages, and attorneys' fees and costs. The appeals in these three related cases are hereby dismissed. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  March 28, 2011

LUCY H. KOH
United States District Judge

---

issued attorney's fees as a civil contempt sanction for violation of the automatic stay even before *Sternberg*. *See In re Dyer*, 322 F.3d 1178, 1189 (9th Cir. 2003). *Sternberg* does not hold that a bankruptcy court *must* consider attorney's fees as a civil contempt sanction, but merely clarifies that the court *may* still do so where appropriate. In light of the permissive nature of civil contempt sanctions and the Bankruptcy Court's view that Bertuccio's unclean hands outweighed otherwise strong policy interests in providing a remedy for violation of the automatic stay provision, the Court does not find remand necessary or appropriate in this instance.

17

Case No.: 09-CV-05209, 09-CV-5292, 09-CV-5454
ORDER DISMISSING RELATED BANKRUPTCY APPEALS